# Exhibit 1

STATE OF NEW YORK
_____

```
                                                     895--B
   Cal. No. 1554

                        2023-2024 Regular Sessions

                            IN SENATE

                           January 9, 2023
                           _____
```

Introduced by Sens. HOYLMAN-SIGAL, FERNANDEZ, MYRIE, SALAZAR, SEPULVEDA -- read twice and ordered printed, and when printed to be committed to the Committee on Internet and Technology -- reported favorably from said committee and committed to the Committee on Finance -- committee discharged and said bill committed to the Committee on Rules -- ordered to a third reading, amended and ordered reprinted, retaining its place in the order of third reading -- recommitted to the Committee on Internet and Technology in accordance with Senate Rule 6, sec. 8 -- reported favorably from said committee and committed to the Committee on Finance -- committee discharged and said bill committed to the Committee on Rules -- ordered to a third reading, amended and ordered reprinted, retaining its place in the order of third reading

AN ACT to amend the general business law, in relation to requiring disclosure of certain social media terms of service

  The People of the State of New York, represented in Senate and Assembly, do enact as follows:

```
 1    Section 1. The general business law is amended by adding a new article
 2  42 to read as follows:
 3                               ARTICLE 42
 4                       SOCIAL MEDIA TERMS OF SERVICE
 5  Section 1100. Definitions.
 6          1101. Required disclosure of terms of service.
 7          1102. Terms of service report.
 8          1103. Violations and remedies.
 9          1104. Application.
10    § 1100. Definitions. For purposes of this article, the following defi-
11  nitions apply:
12    1. "Actioned" means a social media company, that due to a suspected or
13  confirmed violation of the terms of service, has taken some form of
14  action, including, but not limited to, removal, demonetization, deprior-
```

 EXPLANATION--Matter in **italics** (underscored) is new; matter in brackets
                      [-] is old law to be omitted.
                                                            LBD03659-04-4

itization, or banning, against the relevant user or relevant item of content.

2. "Content" means statements or comments made by users and media that are created, posted, livestreamed, shared, or otherwise interacted with by users on an internet-based service or application. "Content" does not include media put on a service or application exclusively for the purpose of cloud storage, transmitting files, or file collaboration.

3. "Public or semipublic internet-based service or application" excludes a service or application used to facilitate communication within a business or enterprise among employees or affiliates of the business or enterprise, provided that access to the service or application is restricted to employees or affiliates of the business or enterprise using the service or application.

4. "Social media company" means a person or entity that owns or operates one or more social media platforms.

5. "Social media platform" means a public or semipublic internet-based service or application that has users in New York and that meets both of the following criteria:

(a) A substantial function of the service or application is to connect users in order to allow users to interact socially with each other within the service or application. A service or application that provides email or direct messaging services shall not be considered to meet this criterion on the basis of that function alone.

(b) The service or application allows users to do all of the following:

(i) construct a public or semipublic profile for purposes of signing into and using the service or application;

(ii) populate a list of other users with whom an individual shares a social connection within the system; and

(iii) create or post content viewable or audible by other users, including, but not limited to, livestreams, on message boards, in chat rooms, or through a landing page or main feed that presents the user with content generated by other users.

6. "Terms of service" means a policy or set of policies adopted by a social media company that specifies, at least, the user behavior and activities that are permitted on the internet-based service owned or operated by the social media company, and the user behavior and activities that may subject the user or an item of content to being actioned.

§ 1101. Required disclosure of terms of service. 1. A social media company shall post terms of service for each social media platform owned or operated by the company in a manner reasonably designed to inform all users of the social media platform of the existence and contents of the terms of service.

2. The terms of service posted pursuant to subdivision one of this section shall include all of the following:

(a) contact information for the purpose of allowing users to ask the social media company questions about the terms of service;

(b) a description of the process that users must follow to flag content, groups, or other users that they believe violate the terms of service, and the social media company's commitments on response and resolution time; and

(c) a list of potential actions the social media company may take against an item of content or a user, including, but not limited to, removal, demonetization, deprioritization, or banning.

3. The terms of service posted pursuant to subdivision one of this section shall be available in the twelve most common non-English

languages spoken by limited-English proficient individuals in the state, as outlined in section two hundred two-a of the executive law, in which the social media platform offers product features, including, but not limited to, menus and prompts.

§ 1102. Terms of service report. 1. On a semiannual basis in accordance with subdivision two of this section, a social media company shall submit to the attorney general a terms of service report. The terms of service report shall include, for each social media platform owned or operated by the company, all of the following:

(a) The current version of the terms of service of the social media platform.

(b) If a social media company has filed its first report, a complete and detailed description of any changes to the terms of service since the previous report.

(c) A statement of whether the current version of the terms of service defines each of the following categories of content, and, if so, the definitions of those categories, including any subcategories:

(i) hate speech or racism;
(ii) extremism or radicalization;
(iii) disinformation or misinformation;
(iv) harassment; and/or
(v) foreign political interference.

(d) A detailed description of content moderation practices used by the social media company for that platform, including, but not limited to, all of the following:

(i) any existing policies intended to address the categories of content described in paragraph (c) of this subdivision;

(ii) how automated content moderation systems enforce terms of service of the social media platform and when these systems involve human review;

(iii) how the social media company responds to user reports of violations of the terms of service;

(iv) how the social media company would remove individual pieces of content, users, or groups that violate the terms of service, or take broader action against individual users or against groups of users that violate the terms of service; and

(v) the languages in which the social media platform does not make terms of service available, but does offer product features, including, but not limited to, menus and prompts.

(e) (i) Information on content that was flagged by the social media company as content belonging to any of the categories described in paragraph (c) of this subdivision, including all of the following:

(A) the total number of flagged items of content;
(B) the total number of actioned items of content;
(C) the total number of actioned items of content that resulted in action taken by the social media company against the user or group of users responsible for the content;
(D) the total number of actioned items of content that were removed, demonetized, or deprioritized by the social media company;
(E) the number of times actioned items of content were viewed or heard by users;
(F) the number of times actioned items of content were shared, and the number of users that viewed or heard the content before it was actioned; and

(G) the number of times users appealed social media company actions taken on that platform and the number of reversals of social media company actions on appeal disaggregated by each type of action.

(ii) All information required by subparagraph (i) of this paragraph shall be disaggregated into the following categories:

(A) the category of content, including any relevant categories described in paragraph (c) of this subdivision;

(B) the type of content, including, but not limited to, posts, livestreams, comments, messages, profiles of users, or groups of users;

(C) the type of media of the content, including, but not limited to, text, images, livestreams, and videos;

(D) how the content was flagged, including, but not limited to, flagged by company employees or contractors, flagged by artificial intelligence software, flagged by community moderators, flagged by civil society partners, and flagged by users; and

(E) how the content was actioned, including, but not limited to, actioned by company employees or contractors, actioned by artificial intelligence software, actioned by community moderators, actioned by civil society partners, and actioned by users.

2. (a) A social media company shall electronically submit a semiannual terms of service report pursuant to subdivision one of this section, covering activity within the third and fourth quarters of the preceding calendar year, to the attorney general no later than April first of each year, and shall electronically submit a semiannual terms of service report pursuant to subdivision one of this section, covering activity within the first and second quarters of the current calendar year, to the attorney general no later than October first of each year.

(b) Notwithstanding paragraph (a) of this subdivision, a social media company shall electronically submit its first terms of service report pursuant to subdivision one of this section, covering activity within the third quarter of two thousand twenty-five, to the attorney general no later than January first, two thousand twenty-six, and shall electronically submit its second terms of service report pursuant to subdivision one of this section, covering activity within the fourth quarter of two thousand twenty-five, to the attorney general no later than April first, two thousand twenty-six. A social media platform shall submit its third report no later than October first, two thousand twenty-six, in accordance with paragraph (a) of this subdivision.

3. The attorney general shall make all terms of service reports submitted pursuant to this section available to the public in a searchable repository on its official internet website.

§ 1103. Violations and remedies. 1. (a) A social media company that violates the provisions of this article shall be liable for a civil penalty not to exceed fifteen thousand dollars per violation per day, and may be enjoined in any court of competent jurisdiction.

(b) A social media company shall be considered in violation of the provisions of this article for each day the social media company does any of the following:

(i) fails to post terms of service in accordance with section eleven hundred two of this article;

(ii) fails to timely submit to the attorney general a report required pursuant to section eleven hundred two of this article; or

(iii) materially omits or misrepresents required information in a report submitted pursuant to section eleven hundred two of this article.

(c) In assessing the amount of a civil penalty pursuant to paragraph (a) of this subdivision, the court shall consider whether the social

media company has made a reasonable, good faith attempt to comply with the provisions of this article.

2. Actions for relief pursuant to this article shall be prosecuted exclusively in a court of competent jurisdiction by the attorney general in the name of the people of the state of New York.

3. Any social media company determined to have violated the provisions set forth in this article shall be granted a cure period of thirty calendar days from the date of notification of such violation. During this cure period, the company must take all necessary actions to rectify the identified violation or violations and achieve full compliance with the requirements delineated in this article. No civil penalty may be imposed against the company provided the violation is verifiably cured within the thirty-day timeframe to the satisfaction of the enforcing authority.

§ 1104. Application. This article shall not apply to a social media company that generated less than one hundred million dollars in gross revenue during the preceding calendar year or to an internet-based service or application for which interactions between users are limited to direct messages, commercial transactions, consumer reviews of products, sellers, services, events, or places, or any combination thereof.

§ 2. This act shall take effect on the one hundred eightieth day after it shall have become a law.