UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| X CORP.,<br><br>                              Plaintiff,<br>     -against-<br><br>LETITIA JAMES, in her official capacity, as Attorney General of New York,<br><br>                              Defendant. | **Case No. 1:25-cv-05068-JPC** |

_____

**X CORP.'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE OF PROPOSED PLAINTIFF-INTERVENOR EMANUEL MCCRAY (A/K/A "TRUMPGENIUS")**
_____

## **TABLE OF CONTENTS**

FACTUAL BACKGROUND ................................................................................................... 1

LEGAL STANDARD .............................................................................................................. 4

ARGUMENT ............................................................................................................................ 5

    I.    Proposed Plaintiff-Intervenor McCray Lacks Standing ................................................ 5

    II.   Intervention Should Be Denied Because X Corp. Adequately Represents McCray's Interests ............................................................................................................ 7

        A.    Mandatory Intervention is Improper ...................................................................... 7

        B.    Permissive Intervention Is Improper ...................................................................... 8

CONCLUSION ......................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                 Page(s)

*1199SEIU United Healthcare Workers E.* v. *PSC Cmty. Servs.*,
   608 F. Supp. 3d 50 (S.D.N.Y. 2022)......................................................................................5, 6

*Butler, Fitzgerald & Potter* v. *Sequa Corp.*,
   250 F.3d 171 (2d Cir. 2001)....................................................................................................4, 7

*Eddystone Rail Co., LLC* v. *Jamex Transfer Serv., LLC*,
   289 F. Supp. 3d 582 (S.D.N.Y. 2018).........................................................................................8

*Floyd* v. *City of New York*,
   302 F.R.D. 69 (S.D.N.Y. 2014) ...............................................................................................5, 8

*Floyd* v. *City of New York*,
   770 F.3d 1051 (2d Cir. 2014)..............................................................................................4, 5, 6

*Helt* v. *Sethi Petroleum, L.L.C.*,
   2022 WL 127977 (5th Cir. Jan. 13, 2022) .................................................................................7

*Hulinsky* v. *Cnty. of Westchester*,
   2023 WL 3162428 (S.D.N.Y. Apr. 28, 2023).............................................................................8

*Lujan* v. *Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................................................5, 6

*N.Y.* v. *Nat'l Sci. Found. ("NSF")*,
   2025 WL 1793858 (S.D.N.Y. June 30, 2025) ..............................................................4, 7, 8, 9

*R Best Produce, Inc.* v. *Shulman-Rabin Mktg. Corp.*,
   467 F.3d 238 (2d Cir. 2006).......................................................................................................4

*Second Amend. Found. Inc.* v. *Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
   2023 WL 8597495 (5th Cir. Dec. 12, 2023) ..............................................................................8

*Stuart* v. *Huff*,
   706 F.3d 345 (4th Cir. 2013) .....................................................................................................8

*TransUnion LLC* v. *Ramirez*,
   594 U.S. 413 (2021)................................................................................................................5, 6

*United States* v. *Int'l Bus. Machs. Corp.*,
   1995 WL 366383 (S.D.N.Y. June 19, 1995) .........................................................................5, 6

*Wash. Elec. Co-op., Inc.* v. *Mass. Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990)..........................................................................................9

*Wells Fargo Bank, N.A.* v. *Wrights Mill Holdings*, *LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015)........................................................................3n

*X Corp.* v. *Bonta*,
    116 F.4th 888 (9th Cir. 2024) .....................................................................................3

**Statutes and Rules**

47 U.S.C. § 230(c) ...........................................................................................................1

N.Y. Gen. Bus. Law § 1102.............................................................................................2

Fed. R. Civ. P. 24................................................................................................... *passim*

**Treatises**

7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
    §1909 (3d ed.) .............................................................................................................7

Plaintiff X Corp. respectfully submits this memorandum of law opposing the Motion to Intervene of Proposed Plaintiff-Intervenor Emanuel McCray (a/k/a "TrumpGenius") (ECF 13 (the "Motion" or "Mot.")).  Mr. McCray's Motion should be denied because (1) X Corp. already adequately represents Mr. McCray's interests, (2) Mr. McCray's intervention would prejudice X Corp., and (3) Mr. McCray lacks Article III standing.

## FACTUAL BACKGROUND

X Corp. brought this action against Defendant Attorney General Letitia James on June 17, 2025, challenging portions of New York Senate Bill S895B, codified at Article 42 (Sections 1100–1104) of the New York General Business Law, on grounds that they (1) violate the First Amendment of the U.S. Constitution and Article I, Section 8, of the New York Constitution (both facially and as-applied to X Corp.) and (2) violate and are thus preempted by 47 U.S.C. § 230(c)(2)(A).  *See generally* ECF 1 ("X Corp. Compl.").

By stipulation of the parties and order of the Court, Defendant Attorney General James's deadline to respond to Plaintiff's Complaint was extended from July 9, 2025 to August 25, 2025. ECF 12.  On July 8, 2025, Mr. McCray filed a *pro se* Motion to Intervene under Federal Rule of Civil Procedure 24, along with a proposed Complaint in Intervention.  ECF 13-1 (the "Proposed McCray Compl.").[1]  Mr. McCray, like X Corp., seeks a declaration that S895B violates the First Amendment.  Proposed McCray Compl. at 12 ¶ A; X Corp. Compl. at 25 ¶ 1.  Mr. McCray acknowledges that he and X Corp. "share the same ultimate objective" and "both allege that New York violates the First Amendment through the State's enactment of" S895B.  Mot. ¶¶ 64, 77.

Mr. McCray, at bottom, makes two additional allegations.

---

[1] Mr. McCray's Proposed Complaint incorporates Paragraphs 1 through 81 of his Motion.  Proposed McCray Compl. ¶ 9.  However, the Motion, as filed on the Court docket, ends at Paragraph 79.

*First*, Mr. McCray alleges that S895B would require X Corp. to disclose a "disaggregated report of @trumpgenius2"—Mr. McCray's "Twitter account"—that would include his "detailed 'user profile.'"  Mot. ¶ 30; Proposed McCray Compl. ¶ 12.[2]  Mr. McCray alleges that such a disclosure is required because Section 1102(1)(e)(i)–(ii) "mandates [that] social media platforms disclose massive amounts of 'disaggregated' data and information," which will then be published by Defendant under Section 1102(3).  Mot. ¶¶ 51–52.  S895B thus, according to Mr. McCray, "operates as a nonjudicial general warrant" in violation of the Constitution's "protections for speech and press" and "limitations on searches and seizures."  Proposed McCray Compl. ¶ 1.  Mr. McCray further alleges that S895B "opens many doors and leaves these doors wide open for malicious actors," because S895B does not "prohibit[] domestic and foreign terrorists; serial rapists; child traffickers; stalkers; pedophiles; doxxers; swatters and other maligned individuals from exploiting access to the disaggregated data."  *Id.* ¶ 22.

Section 1102(1)(e), by its plain language, requires covered social media companies to disclose "[i]nformation on content that was flagged" by the company as belonging to any of the categories enumerated in Section 1102(1)(c),[3] including statistics on the number of times such content was "flagged" and "actioned."  N.Y. Gen. Bus. Law § 1102(1)(e)(i)(A), (B).  The statistics required under Section 1102(1)(e)(i) must then be "disaggregated" by (1) the "category of content," including any categories from Section 1102(1)(c); (2) the "type of content" (e.g., "posts" or "comments"); (3) the "type of media" (e.g., "text" or "video"); and (4) "how the content was flagged" or "actioned" (e.g., by "users" or by "artificial intelligence software").  § 1102(1)(e)(ii).  Disaggregation by specific users or user profiles is not required.  *See id.*  Reports that social media

---

[2] Unless otherwise stated, emphases in quotes are added and internal cites and quotes are omitted.

[3] Those categories are (1) hate speech or racism, (2) extremism or radicalization, (3) disinformation or misinformation, (4) harassment, and (5) foreign political interference.  § 1102(1)(c).

2

companies submitted to the California Attorney General under California Assembly Bill ("AB") 587—whose Section 22677(a)(5) is identical to S895B's Section 1102(1)(e)—before the Ninth Circuit enjoined the enforcement of Section 22677(a)(5) on First Amendment grounds (*see X Corp.* v. *Bonta*, 116 F.4th 888 (9th Cir. 2024)), did not include any information about specific users or user profiles.[4]

***Second***, Mr. McCray alleges that S895B operates as "a Censor and government censorship" and also "converts" the covered social media companies into "Institutional Censors" that will effectuate "government censorship" on New York State's behalf. Mot. ¶ 76. Mr. McCray further alleges (without providing any factual allegations in support) that X Corp. has somehow already engaged in "COVID-19 censorship on behalf of New York, other States and the CCP [Chinese Communist Party]." *Id.* ¶¶ 69–70;[5] *see also* Proposed McCray Compl. ¶ 27 (showing Mr. McCray's COVID-19-related post that was allegedly censored). This allegation of censorship concerning a COVID-19-related post made by Mr. McCray on April 28, 2021 is completely untethered from any allegations about the constitutionality of S895B. *Id.* Indeed, to the extent

---

[4] *See, e.g.*, **X Corp. California Terms of Service Report (Jan. 1, 2024)**, https://oag.ca.gov/sites/default/files/X%20Corp.%20-%20Q3%202023%20California%20TOS%20Report.pdf/X%20Corp.%20-%20Q3%202023%20California%20TOS%20Report.pdf (last visited July 22, 2025); **Meta Terms of Service Report (Dec. 29, 2023)**, https://oag.ca.gov/sites/default/files/Meta%20Q3%202023%20California%20AB%20587.pdf/Meta%20Q3%202023%20California%20AB%20587.pdf (last visited July 22, 2025); **Snap Inc. California Terms of Service Report (Jan. 1, 2024)**, https://oag.ca.gov/sites/default/files/Snap%20Inc.%20-%20California%20Terms%20of%20Service%20Report%20%28July%201%20-%20September%2030%2C%202023%29.pdf/Snap%20Inc.%20-%20California%20Terms%20of%20Service%20Report%20%28July%201%20-%20September%2030%2C%202023%29.pdf (last visited July 22, 2025). The court may take judicial notice of the existence and content of these reports. *See, e.g.*, *Wells Fargo Bank, N.A.* v. *Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (finding that courts routinely take judicial notice of governmental records, such as those available on official government websites).

[5] The Proposed McCray Complaint incorrectly numbers Paragraph 70 as Paragraph 77. This cite is to Paragraph 77, which should be Paragraph 70.

3

that it occurred, it happened well before S895B was even introduced. It is not at all clear how, if at all, this allegation relates to Mr. McCray's proposed challenge to S895B.

## LEGAL STANDARD

Intervention of right (Fed. R. Civ. P. 24(a)) or by permission (Fed. R. Civ. P. 24(b)) requires a showing that: (1) the motion is timely; (2) the applicant asserts an interest "relating to the property or transaction that is the subject of the action"; (3) "the interest may be impaired by the disposition of the action"; and (4) "the interest is not protected adequately by the parties to the action." *Floyd* v. *City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014); *see id* ("Failure to satisfy ***any one*** of these requirements is a sufficient ground to deny the application.") (emphasis in original). While the "burden to demonstrate inadequacy of representation is generally speaking minimal," the "Second Circuit 'demand[s] a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective.'" *N.Y.* v. *Nat'l Sci. Found. ("NSF")*, 2025 WL 1793858, at *3 (S.D.N.Y. June 30, 2025) (Cronan, J.) (quoting *Butler, Fitzgerald & Potter* v. *Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001)). "Where there is an identity of interest," the "movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Id.* The "scope of intervention of right authorized by Rule 24(a)" is "limited." *Id.* at *4.

The "court considers substantially the same factors whether the claim for intervention is of right" under Rule 24(a)(2) or "permissive" under Rule 24(b)(2). *Id.* at *5 (quoting *R Best Produce, Inc.* v. *Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). In "exercising its discretion over a motion for permissive intervention, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.*

4

While "courts generally accept as true an applicant's well-pleaded, non-conclusory allegations on a motion to intervene, this does not permit courts to turn a blind eye where the allegations are contradicted or unsupported by 'credible' proof, or are unproven by a 'clear showing.'" *Floyd* v. *City of New York*, 302 F.R.D. 69, 101 (S.D.N.Y. 2014), *aff'd*, *Floyd*, 770 F.3d at 1061 (affirming denial of motion to intervene where movants "submitted no evidence to substantiate their claims . . . [a]side from their own assertions").

Finally, the proposed intervenor must demonstrate Article III standing. *1199SEIU United Healthcare Workers E.* v. *PSC Cmty. Servs.*, 608 F. Supp. 3d 50, 60 (S.D.N.Y. 2022) ("[E]ach Movant's request to intervene must be denied unless that Movant can demonstrate the Movant's standing[.]"); *United States* v. *Int'l Bus. Machs. Corp.*, 1995 WL 366383, at *5 (S.D.N.Y. June 19, 1995) (The "threshold question" is "whether the proposed intervenors have standing to maintain an action against the defendants . . . [the] court denies intervention" if the "proposed intervenors fail[] to state a claim that could be independently prosecuted"). Article III standing requires a plaintiff to demonstrate that (1) they have suffered an "injury in fact" that is concrete, particularized, and actual or imminent, and not conjectural or hypothetical; (2) the injury is fairly traceable to the defendant's conduct; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See TransUnion LLC* v. *Ramirez*, 594 U.S. 413, 423 (2021); *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

## ARGUMENT

### I.     Proposed Plaintiff-Intervenor McCray Lacks Standing

Intervention under Rule 24(a) and Rule 24(b) should be denied, because Mr. McCray has failed to allege facts demonstrating that he has Article III standing, which is a threshold inquiry

for intervention. *See PSC Cmty. Servs.*, 608 F. Supp. 3d at 60; *Int'l Bus. Machs. Corp.*, 1995 WL 366383, at *5. Mr. McCray's only allegations of injury rely on a misreading of S895B that posits that the statute will require covered platforms to disclose specific information about Mr. McCray's postings on those platforms. That is, however, simply not the case. As noted above, S895B does not compel disclosure of any specific information about Mr. McCray or his user profile, as demonstrated by the plain language of the statute and the reports that have been submitted to date in connection with California AB 587. *See* note 4 above. And even if S895B did require disclosures about him personally, Mr. McCray does not allege how, why, or when his information would be misused.

Moreover, Mr. McCray's conclusory allegation that X Corp. is colluding with the State of New York and the Chinese Communist Party to censor COVID-19 information is insufficient to give rise to the type of injury in fact needed for Article III standing. For one thing, the allegation relates to a post made by Mr. McCray in 2021, well before S895B was even proposed, and has nothing to do with any alleged harm caused to Mr. McCray by S895B. And beyond that, such conclusory allegations, unsupported by proof, need not be credited in a motion to intervene. *See, e.g., Floyd*, 770 F.3d at 1061 (affirming denial of motion to intervene where movants "submitted no evidence to substantiate their claims . . . [a]side from their own assertions"). Mr. McCray's allegations thus fail to provide any sufficiently concrete and particularized injury in fact that is actual or imminent, and not conjectural or hypothetical, to satisfy Article III. *See TransUnion LLC*, 594 U.S. at 423; *Lujan*, 504 U.S. at 560–61.

## II. Intervention Should Be Denied Because X Corp. Adequately Represents McCray's Interests

### A. Mandatory Intervention is Improper

The Court should deny mandatory intervention under Rule 24(a) because Mr. McCray has failed to allege facts plausibly demonstrating that his interests are not adequately represented by X Corp., which, as Mr. McCray concedes, shares the same ultimate objective as him—namely, striking down S895B.

Mr. McCray "holds th[e] same interest" as X Corp. because he, like X Corp., seeks a declaration that S895B violates the First Amendment of the U.S. Constitution. *NSF*, 2025 WL 1793858, at *3; *see* Proposed McCray Compl. at 12 ¶ A; X Corp. Compl. at 25 ¶ 1. Indeed, Mr. McCray acknowledges that he and Plaintiff X Corp. "share the same ultimate objective," given that he and X Corp. "both allege that New York violates the First Amendment through the State's enactment of" S895B. Mot. ¶¶ 64, 70. This alignment of interests gives rise to a "presumption" that intervention is unnecessary. *Sequa Corp.*, 250 F.3d at 179–80; *NSF*, 2025 WL 1793858, at *3.

Mr. McCray has failed to rebut that presumption. Mr. McCray asserts that X Corp. and Defendant are "incapable of representing [his] personal interests" because "both parties have already shown signs of having colluded involving the censorship of COVID-19 information[.]" Mot. ¶ 69. This conclusory assertion does not provide sufficient "[e]vidence of collusion, adversity of interest, nonfeasance, or incompetence" to "overcome the presumption of adequacy." *Sequa Corp.,* 250 F.3d at 180; *see also Helt* v. *Sethi Petroleum, L.L.C.*, 2022 WL 127977, at *1 (5th Cir. Jan. 13, 2022) ("Such adversity, collusion, or nonfeasance must be more than merely theoretical; there must be a 'serious probability' that the existing party and the movant may not share the same ultimate objective.") (citing 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and

7

Procedure § 1909 (3d ed.)); *Floyd*, 302 F.R.D. at 101 (motion to intervene must be supported by "credible proof" and "a clear showing"). Intervention is not permitted absent something more, which Mr. McCray does not and cannot provide.

And as a general matter, where, as here, a proposed intervenor seeks invalidation of the same statute as the plaintiff, on the same basis, courts have concluded that intervention is improper because the plaintiff adequately represents the intervenor's interests. *See Second Amend. Found. Inc.* v. *Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 2023 WL 8597495, at *1 (5th Cir. Dec. 12, 2023) (affirming denial of motion to intervene, finding that plaintiffs adequately represented proposed intervenor's interests because they "filed nearly identical claims and [sought] identical relief"—invalidation of the same federal regulation); *Stuart* v. *Huff*, 706 F.3d 345, 353 (4th Cir. 2013) (affirming denial of motion to intervene, finding that proposed intervenors' interests were adequately represented because the intervenors "share[d] the same objective as the existing government defendants: upholding the constitutionality of the Act"); *Hulinsky* v. *Cnty. of Westchester*, 2023 WL 3162428, at *4 (S.D.N.Y. Apr. 28, 2023) (denying motion to intervene, finding that defendant adequately represented proposed intervenor's interests because they "share[d] the same goal" of "upholding" the challenged statute); *NSF*, 2025 WL 1793858, at *3 (denying motion to intervene, finding that defendants adequately represented proposed intervenor's interests because they both sought to "defend the Priority Directive").

### B. Permissive Intervention Is Improper

The Court should also deny permissive intervention under Federal Rule 24(b). X Corp. "adequately represent[s]" Mr. McCray's "interests in this litigation," which "weighs against permissive intervention." *NSF*, 2025 WL 1793858, at *5; *see Eddystone Rail Co., LLC* v. *Jamex Transfer Serv., LLC*, 289 F. Supp. 3d 582, 595 (S.D.N.Y. 2018) ("[T]he considerations that render

[the Proposed Intervenors] ineligible for intervention as of right under Rule 24(a) here militate strongly as well against granting permissive intervention under Rule 24(b).").

In addition, permissive intervention should be denied because the "addition of [Mr. McCray] as an intervenor would not aid in the 'just and equitable adjudication' of the issues at hand." *NSF*, 2025 WL 1793858, at *5. Plaintiff X Corp. and Defendant Attorney General James are "well-equipped to provide the information necessary for the Court to consider [S895B]," and Mr. McCray has provided no "'concrete factual submissions' which would benefit the court" and justify "permissive intervention despite adequacy of representation." *Id.*

Instead, Mr. McCray's presence in the lawsuit would "prejudice the adjudication of the original parties' rights," *id.*, by adding issues about particular instances of alleged censorship of COVID-19 information that do not materially relate to the claims in the litigation and could cause undue delay. *Wash. Elec. Co-op., Inc.* v. *Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) ("Intervention cannot be used as a means to inject collateral issues into an existing action."); *see also NSF*, 2025 WL 1793858, at *6 n.3 (Intervention should be denied if the court cannot "readily determine what claims or defenses [the proposed intervenor] is trying to assert[.]").

## CONCLUSION

Plaintiff X Corp. respectfully requests that the Court deny Mr. McCray's Motion.

Dated: July 22, 2025

> By: /s/ Joel Kurtzberg
> CAHILL GORDON & REINDEL LLP
> Joel Kurtzberg (SBN NY 2835007)
> Floyd Abrams (SBN NY 1758184)
> Jason Rozbruch (SBN NY 5753637)
> 32 Old Slip
> New York, NY 10005
> Phone: 212-701-3120
> Facsimile: 212-269-5420
> jkurtzberg@cahill.com
> fabrams@cahill.com
> jrozbruch@cahill.com
>
> *Attorneys for Plaintiff X Corp.*

## CERTIFICATION OF COMPLIANCE

The total number of words contained herein, exclusive of the cover page, certificate of compliance, table of contents, and table of authorities, is 2,727 words.

Dated:  July 22, 2025

By: <u>/s/ Joel Kurtzberg</u>
CAHILL GORDON & REINDEL LLP
Joel Kurtzberg (SBN NY 2835007)
Floyd Abrams (SBN NY 1758184)
Jason Rozbruch (SBN NY 5753637)
32 Old Slip
New York, NY 10005
Phone: 212-701-3120
Facsimile: 212-269-5420
jkurtzberg@cahill.com
fabrams@cahill.com
jrozbruch@cahill.com

*Attorneys for Plaintiff X Corp.*
