# CAHILL GORDON & REINDEL LLP

32 OLD SLIP
NEW YORK, NY 10005

TELEPHONE: (212) 701-3000
WWW.CAHILL.COM

| 1990 K STREET, N.W.<br>WASHINGTON, DC 20006<br>(202) 862-8900 | 221 W. 10th STREET<br>WILMINGTON, DE 19801<br>(302) 884-0000 | 20 FENCHURCH STREET<br>LONDON EC3M 3BY<br>+44 (0) 20 7920 9800 |
|---|---|---|

(212) 701-3120

September 17, 2025

Re:     *X Corp.* v. *James*, No. 1:25-cv-05068-JPC (S.D.N.Y.)

Dear Judge Cronan:

We write on behalf of Plaintiff X Corp. under Rule 6.A of the Court's Individual Rules to respectfully request a pre-motion conference for X Corp.'s anticipated Fed. R. Civ. P. 11 motion for sanctions against Defendant Attorney General James or to set the following proposed briefing schedule for the motion: Plaintiff's moving brief due October 27, 2025; Defendant's opposition due December 11, 2025; and Plaintiff's reply due January 9, 2026.[1]

Defendant's First Amendment arguments violate Fed. R. Civ. P. 11 because they are directly contrary to the Second Circuit's recent decision in *Volokh* v. *James*, 148 F.4th 71 (2d Cir. 2025) and do not include a "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

I.   **Background**

This case involves a First Amendment challenge to certain provisions of New York Senate Bill S895B[2]—specifically, N.Y. Gen. Bus. Law §§ 1102(1)(c), 1102(1)(d)(i), 1102(1)(e), and 1103 (as it applies to the prior three provisions) (collectively, the "Content Category Report Provisions"). Those provisions require covered social media companies to submit reports to the Attorney General, under threat of significant financial penalties and lawsuits for injunctive relief, detailing whether, and if so how, their platforms define and moderate some of the most controversial categories of speech—i.e., (i) hate speech or racism, (ii) extremism or radicalization, (iii) disinformation or misinformation, (iv) harassment, and (v) foreign political interference and to provide detailed statistics about their moderation of those speech categories.

The Content Category Report Provisions are essentially identical to those in a California law, California Assembly Bill ("AB") 587, that were struck down by the Ninth Circuit in *X Corp.* v. *Bonta*, 116 F.4th 888 (9th Cir. 2024). *See* Ex. A (redline comparing S895B and AB 587); *see also* Compl. ¶ 3; *id.* at Ex. 3 (Dkt. No. 1-3) at 220 (bill sponsor Assemb. Member Grace Lee noting that the two laws are "identical"). In *Volokh*, the Second Circuit held that New York's Hateful Conduct Law, N.Y. Gen. Bus. Law § 394-ccc, would violate the First Amendment and be subjected

---

[1] The proposed briefing schedule is the same as that agreed upon by the parties for Defendant's proposed motion to dismiss, should briefing be necessary on that motion. *See* X Corp.'s Letter in Opposition to Defendant's Proposed Motion to Dismiss, filed contemporaneously with this letter.

[2] S895B is codified at Article 42 (Sections 1100–1104) of the New York General Business Law.

CAHILL GORDON & REINDEL LLP

-2-

to heightened (i.e., intermediate or strict) scrutiny if it were interpreted in a manner that made it "analogous" to AB 587. *Volokh*, 148 F.4th at 93 (citing with approval *X Corp*, 116 F.4th 888). The statute in this case is not only analogous to AB 587; it is effectively the same statute.

*Volokh* leaves no room for debate that the Content Category Report Provisions violate the First Amendment under controlling law. And it renders Defendant's continued defense of the constitutionality of those provisions frivolous in violation of Rule 11. On August 22, 2025, X Corp. served Defendant with a Rule 11 letter and motion explaining that, given *Volokh*, if Defendant "present[ed] to the court a pleading, written motion, or other paper" (Fed. R. Civ. P. 11(b)) asserting that the Content Category Report Provisions survive First Amendment scrutiny, X Corp. would move for Rule 11 sanctions. *See* Ex. B (Aug. 22, 2025 Rule 11 letter and motion).

Defendant's arguments regarding *Volokh* in its pre-motion letter (Dkt. No. 20) ("Ltr.") confirm that sanctions are appropriate. Defendant cites *Volokh* no less than eight times, and not once does Defendant bring to the Court's attention or even address the portion of *Volokh* in which the Second Circuit explained that, if a law is interpreted "analogously" to AB 587's Content Category Report Provisions (which are, again, identical in all material respects to S895B's Content Category Report Provisions), then "*Zauderer* would not apply, and the statute would not satisfy the intermediate or strict scrutiny that would follow." *Volokh*, 148 F.4th at 93. And rather than make a "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Fed. R. Civ. P. 11(b)(2), Defendant simply makes arguments that were rejected by the Second Circuit in *Volokh*. That is sanctionable under Rule 11.

## II. The Second Circuit's Decision in *Volokh*

*Volokh* involved a First Amendment challenge to New York's Hateful Conduct Law, which required social media networks to create and publicize mechanisms for users to complain about instances of "hateful conduct," which was defined under the statute as "the use of a social media network to vilify, humiliate, or incite violence against a group or a class of persons on the basis of race, color, religion, ethnicity, national origin, disability, sex, sexual orientation, gender identity, or gender expression." 148 F.4th at 80 (quoting § 394-ccc(1)(a)). The statute also required networks to "have a clear and concise policy readily available and accessible on their website and application which includes how such social media network will respond and address the reports of incidents of hateful conduct on their platform." 148 F.4th at 80 (quoting § 394-ccc(3)).

The Second Circuit ultimately certified three questions to the New York Court of Appeals about how to interpret the Hateful Conduct Law because it concluded that, under one plausible reading of the statute, the law would trigger heightened (i.e., either intermediate or strict) scrutiny—which it would fail—and under another plausible reading, *Zauderer* review would apply, which the statute would survive. 148 F.4th at 99–100.

The Court held that the policy disclosure requirement of the statute would be unconstitutional if it "require[d] social media networks to reference or adopt the State's definition of 'hateful conduct' found in § 394-ccc(1)(a)." *Id.* at 93. If that were the case, then "*Zauderer* would not apply, and the statute would not satisfy the intermediate or strict scrutiny that would follow." *Id*. The Court explained that, "[r]equiring a social media network to disclose a content moderation policy that explains its procedures with respect to hateful conduct, as defined by the statute, would force that network to build and describe its framework for moderating conduct

-3-

around the *State's* definition, thereby burdening the network's expressive activity of curating content." *Id.* Such an interpretation would make the law analogous to AB 587, the "California law considered by the Ninth Circuit in *X Corp. v. Bonta*, 116 F.4th 888 (9th Cir. 2024)." *Id.*

The Court cited *X Corp.*'s holding with approval, including its holding that "*Zauderer* did not apply" to AB 587 because the statute "require[d] a company to recast its content-moderation practices in language prescribed by the State, implicitly opining on whether and how certain categories of content should be moderated." *Id.* And the Court noted that even though the "New York Hateful Conduct Law imposes fewer disclosure requirements than [AB 587]," it would still be unconstitutional if read to require disclosure of "content moderation policies that reference or encompass the State's definition of hateful conduct" because it would then "essentially require social media networks to 'provide a forum for someone else's views' – in this case, the State's." *Id*. at 93–94.

### III. Defendant's First Amendment Arguments Are Foreclosed by *Volokh*

Defendant's First Amendment arguments are all foreclosed by *Volokh*. In Defendant's pre-motion letter, for example, Defendant argues that the statute in this case is constitutional because *Zauderer* applies, rather than heightened scrutiny. Ltr. at 2–3. Defendant does not mention that *Volokh* held that *Zauderer* would not apply to a law "analogous" to AB 587, *see* 148 F.4th at 93, which is identical to the law challenged here.

In a footnote, Defendant argues that *Volokh* is not dispositive because it merely "certified a question about the proper construction of New York's Hateful Conduct Law—a different statute—to the New York Court of Appeals," and "did not decide the constitutionality of [S895B]—a statute which was not before the *Volokh* panel." Ltr. at 3 n.2. But *Volokh* did not merely certify questions. It rendered a holding—i.e., that *Zauderer* would not apply to the Hateful Conduct Law and it would be unconstitutional if it were interpreted in a way that made it "analogous to a California law considered by the Ninth Circuit in *X Corp. v. Bonta*." *Volokh*, 148 F.4th at 93. Defendant never even addresses that holding, which is dispositive.

Defendant's argument that *Volokh* did not rule on the challenged provisions of the statute in this case—even though it opined about the constitutionality of an identical California statute—does not pass muster under Rule 11, which holds litigants to a duty of candor, "require[s] litigants to 'stop-and-think' before initially making legal or factual contentions," and "subject[s] litigants to potential sanctions for insisting upon a position after it is no longer tenable[.]" Fed. R. Civ. P. 11 Advis. Comm. Notes (1993 Amendment).

Given *Volokh*, the arguments set forth by Defendant in its pre-motion letter that the Content Category Report Provisions do not violate the First Amendment are "frivolous," have "no chance of success," and are unsupported by a "reasonable argument to extend, modify or reverse the law as it stands." *Fishoff* v. *Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011). Rule 11 sanctions are appropriate where, as here, a litigant's legal position is clearly foreclosed by binding authority. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 2005 WL 626866, at *1–2 (S.D.N.Y. Mar. 17, 2005) (sanctioning litigant that took position under Indiana law foreclosed by Indiana Supreme Court authority); *de la Fuente* v. *DCI Telecomms., Inc.*, 259 F. Supp. 2d 250, 261–63, 269–70 (S.D.N.Y. 2003) (sanctioning litigant that took position under federal securities law foreclosed by U.S. Supreme Court authority).

CAHILL GORDON & REINDEL LLP

-4-

Respectfully submitted,

/s/ Joel Kurtzberg
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
Telephone: (212) 701-3120
jkurtzberg@cahill.com

*Counsel for Plaintiff X Corp.*

Honorable John P. Cronan
United States District Court Judge
Southern District of New York
500 Pearl Street, Courtroom 12D
New York, NY 10007

**By ECF**